UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-CV-81300-RLR

MOON AND STAR
LOGISTICS, LLC,

            Plaintiff,

vs.

DIRECT TRAFFIC
SOLUTIONS, INC.,

            Defendant.

_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT [ECF No. 17]

Plaintiff, Moon and Star Logistics, LLC ("MSL"), operates a freight carrier business. ¶¶38, 47.[1] Defendant, Direct Traffic Solutions, LLC ("Direct Traffic") brokers freight carrier transactions by matching shippers with freight carriers. ¶9. On or around March 21, 2023, Direct Traffic allegedly received a demand for money from an individual that falsely represented that he worked for MSL. ¶10. Thereafter, on May 10, 2023, Direct Traffic filed a "FreightGuard Report" on Carrier411, a website that provides information to brokers, shippers, and other logistics industry professionals about trucking companies and freight carriers. ¶¶6, 17. According to

---

[1] Unless otherwise noted, all paragraph numbers correspond to the paragraphs in the Complaint at ECF No. 1.

the Complaint, FreightGuard Reports are "supposed to be honest reviews submitted by brokers about the services provided by freight carriers (like [MSL])." ¶8.

MSL alleges that the May 10, 2023, FreightGuard Report falsely stated that MSL: (1) "performed an unauthorized re-brokering of a shipment for Direct Traffic," (2) "attempted to modify the parties' agreement while a shipment was in transit," (3) "engaged in fraudulent and unethical activity," and (4) "brokered a load with Direct Traffic and gave the load to another carrier." ¶¶17-19. MSL further alleges that Direct Traffic's publication of the false FreightGuard Report resulted in brokers refusing to hire MSL to carry their loads, MSL's loss of a new contract with a broker that guaranteed MSL a "minimum gross linehaul of $700,000," and other damages. ¶¶30-34.

Based on this FreightGuard Report, MSL brought a two-count complaint alleging Defamation Per Se (Count I) and Defamation Per Quod (Count II) ("Complaint"). ECF No. 1. Direct Traffic moves to dismiss the Complaint, or in the alternative, for a more definite statement ("Motion"). ECF No. 17. I have reviewed the Motion and MSL's response. ECF Nos. 17, 19. Direct Traffic did not file a reply and the deadline to do so has passed. For the below stated reasons, the Motion should be **DENIED**.

## I.     LEGAL PRINCIPLES

*A. Failure to State a Claim — Rule 12(b)(6)*

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555 (citations omitted).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

3

to relief that is plausible on its face.'" *Iqbal*, 556 U. S. at 678 (citing *Twombly*, 550 U.S. at 570). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

With limited exceptions, the Court looks only to the allegations in the complaint, any documents appended to the complaint or incorporated by reference into it, and any judicially-noticed facts. *Reed v. Royal Caribbean Cruises Ltd.*, No. 20-CV-24979-RAR, 2022 WL 3027906, at *6 (S.D. Fla. Aug. 1, 2022) (J. Ruiz). The Court also may consider other documents whose authenticity is undisputed and which are central to the claims in this matter. *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005).

B. *More Definite Statement – Rule 12(e)*

Pursuant to Federal Rule of Civil Procedure 12(e):

4

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

"Since courts have liberally construed the pleading standard under Rule 8(a), 'a short and plain statement' will be enough, unless upon motion it is shown that the pleading 'is so ambiguous that a party cannot reasonably' respond." *Briseus v. JPMorgan Chase Bank, N.A.*, No. 18-CV-80671, 2018 WL 3586140, at *2 (S.D. Fla. July 26, 2018) (J. Bloom) (quoting *Betancourt v. Marine Cargo Mgm't, Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996) (J. King)). "Most courts disfavor the use of Rule 12(e), and motions for a more definite statement should not be used as a means of discovery." *Id.* (quoting *Royal Shell Vacations, Inc. v. Scheyndel*, 233 F.R.D 629, 630 (M.D. Fla. 2005)) (internal quotations omitted).

C. *Defamation*

To state a claim for defamation under Florida law, a plaintiff must allege the following elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Briseus*, 2018 WL 3586140, at *3 (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

"[A] a claim for defamation may be categorized in one of two ways: defamation *per quod* or defamation *per se*." *Flynn v. Cable News Network, Inc.*, No. 22-CV-343, 2023 WL 5985193, at *4 (M.D. Fla. Feb. 22, 2023) (quoting *Centennial Bank v.*

*ServisFirst Bank Inc.*, No. 16-CV-88-T-36JSS, 2019 WL 13037034, at *6 (M.D. Fla. Apr. 17, 2019)). A publication is defamation *per se* "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Id*. (first quoting *Daniels v. HSN, Inc.*, No. 18-CV-3088, 2020 WL 533927, at *3 (M.D. Fla. Feb. 3, 2020); then citing *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)). "[W]hen a defendant's statement is *per se* defamatory, the plaintiff need not prove that he was damaged by the statement because it is presumed that the statement caused him damage." *Daniels*, 2020 WL 533927, at *4 (first citing *Alan v. Wells Fargo Bank, N.A.*, 604 Fed. Appx. 863, 865 (11th Cir. 2015); then citing *Risk Ins. & Reinsurance Sols. v. R+V Versicherung*, No. 04-61119-CIV, 2007 WL 9700868, at *7 (S.D. Fla. June 6, 2007) (J. Seitz)).

In contrast, defamation *per quod* "requires explanation of context. In *per quod* actions, the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo." *Flynn*, 2023 WL 5985193, at *4 (first quoting *Daniels*, 2020 WL 533927, at *4; then citing *Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013) (J. Scola)). A plaintiff asserting a claim for defamation *per quod* must allege special damages. *Id*. at *4 (citations omitted). "Special damages are *actual, out of pocket losses* which must be proven by specific evidence as to the time, cause and amount; whereas general damages encompass the more customary harms inflicted by a defamatory falsehood, such as impairment of reputation and standing

6

in the community." *Flynn*, 2023 WL 5985193, at *5 (quoting *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) (J. Ryskamp)) (emphasis in original). "Special damages' chief characteristic ... is a realized or liquidated loss." *Id.* (quoting *Falic*, 347 F. Supp. 2d at 1268) (internal quotations omitted). "Allegations for special damages must be pled in more than 'a conclusory manner; rather [w]ords actionable ... *per quod* are those who[se] injurious effect must be established by due allegation and proof.'" *Id.* (quoting *Anderson v. Smith*, No. 19-CV-222-J20JRK, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020)).

## DISCUSSION

*A. The Complaint is not subject to dismissal for failure to allege when Direct Traffic knew the statements in the FreightGuard Report were false.*

Direct Traffic argues the Complaint should be dismissed because MSL did not plead sufficient facts to show when Direct Traffic knew the statements in the FreightGuard Report were false. ECF No. 17 at 3-4. MSL responds that Direct Traffic's argument fails for three reasons: (1) MSL was only required to allege that Direct Traffic acted negligently when it published the false statements in the FreightGuard Report, not that it acted with knowledge, (2) the Complaint sufficiently alleges that Direct Traffic published the FreightGuard Report with knowledge of its falsity, and (3) Florida law requires a defamation plaintiff to allege the date the defamatory statements were made, not the date the defendant knew the statements were false. ECF No. 19 at 2, 5-6.

7

As an initial matter, MSL is correct that it was not required to plead that Direct Traffic knew the defamatory statements in the FreightGuard Report were false when it published the report. Because MSL is not a public official, it was only required to plausibly allege that Direct Traffic acted negligently in publishing the allegedly false and defamatory statements in the FreightGuard Report. *See Anderson*, 2020 WL 10058207, at *1 n.2 (citations omitted).

In support of MSL's claim that Direct Traffic acted with the requisite fault in publishing the FreightGuard Report, the Complaint includes the following allegations:

> 10. On or around March 21, 2023, Direct Traffic was the victim of fraud when it received an email from the Fraudster, who falsely represented that he worked for [MSL]. The email stated: "[g]ood morning I have done a load and I need Quick pay," and it further stated that he was entitled to payment in the amount of $2,156.00.
>
> 11. Despite the suspicious demand for "quick pay," Direct Traffic did nothing to confirm whether the demand was legitimate.
>
> 12. Direct Traffic did not verify whether the Fraudster's email address (moon**d**starlogistics@gmail.com) was the same as [MSL's] registered email address (moon**and**starlogistics@gmail.com). (emphasis in original).
>
> 13. Direct Traffic did not contact [MSL] at its registered email address – even though, upon information and belief, that information is available on Carrier411 – to confirm the legitimacy of the payment demand, a practice that many brokers follow given fraud in the industry.
>
> 21. Direct Traffic published the FreightGuard Report, and refused to remove it, despite [MSL's] numerous oral and written communications to Direct Traffic explaining that [MSL] had no involvement with the load for which Direct Traffic paid the Fraudster.

> 40, 49. Direct Traffic knew that the FreightGuard Report was false because, before the FreightGuard Report was published, [MSL] advised Direct Traffic that it had no involvement with the Fraudster or the work for which the Fraudster demanded payment.

ECF No. 1. Viewed in the light most favorable to MSL, these allegations plausibly allege that Direct Traffic acted at least negligently in publishing the FreightGuard Report. *See One for Israel v. Reuven*, No. 21-61475-CIV, 2022 WL 4465389, at *4 (S.D. Fla. Sept. 26, 2022) (J. Singhal). MSL alleges that it told Direct Traffic that it was not involved with the transaction at issue before Direct Traffic published the FreightGuard Report. This fact, in particular, plausibly alleges that Direct Traffic acted with the requisite fault when it published the report.

Direct Traffic wrongly argues that MSL was required to plead facts identifying when Direct Traffic knew the statements in the FreightGuard Report were false. The Motion does not cite any legal authority that required MSL to plead this information. Instead, the Motion cites authority that holds that a defamation plaintiff is required to plead the time frame within which the *publication* of the defamatory statements occurred – a fact clearly pled in the Complaint. ECF No. 17 at 3-4 (citing *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (J. Seitz))); *see* Complaint, ¶17 (alleging that the publication occurred on May 10, 2023). Because MSL was not required to plead facts identifying when Direct Traffic knew the statements were false, Direct Traffic's Motion to Dismiss the Complaint on the basis that it does not include this information should be denied.

B. *Count II of the Complaint plausibly alleges MSL's entitlement to special damages.*

Direct Traffic argues that Count II of the Complaint, for defamation *per quod*, should be dismissed because MSL does not sufficiently allege entitlement to special damages. ECF No. 17 at 5. Specifically, Direct Traffic argues that MSL's claim that the FreightGuard Report caused it to lose revenue and profits is based on speculative future business deals and does not amount to realized or liquidated loss. *Id*. MSL responds that its specific allegations regarding lost revenue and profits, with reference to client names and contract amounts, adequately pleads special damages. ECF No. 19 at 2, 7-8.

Count II of the Complaint alleges that MSL has suffered the following injuries:

30. As a result of Direct Traffic publishing the FreightGuard Report, brokers refused to hire [MSL] to carry their loads.

31. For example, on May 24, 2023, shortly after Direct Traffic Published the FreightGuard Report, [MSL] received the following message from one of its brokers, Convoy, Inc., disabling its account and its ability to do business with Convoy:

> Hello,
>
> Convoy utilizes third party carrier monitoring and reporting services, and considers that information when reviewing our carrier compliance criteria.
>
> Your account has been flagged to Convoy's Quality & Compliance team because of one or more reports of alleged carrier infractions.
>
> While Convoy and the reporting service do not investigate and take no position on the accuracy of such reports, in an abundance of caution, your account has been removed from Convoy's platform.
>
> You may provide a detailed response to what occurred causing these reports for further consideration.

32. Two days later, due to the FreightGuard Report, [MSL] lost a new contract with a broker that guaranteed [MSL] "minimum gross linehaul

> of $700,000." Like the Convoy cancellation, the stated reason for this contract termination was the false FreightGuard Report: "This contract terminated due to carrier 411 reports."
>
> 34. As a result of Direct Traffic's actions, [MSL's] growing business has been destroyed. With brokers refusing to use its services, [MSL] lost a new $700,000 contract it had just secured; [MSL] lost its truck drivers; and [MSL] was forced to sell three of its four trucks, with the last truck sitting at the shop waiting to be sold. [MSL's] growing business – conservatively valued between $350,000 and $450,000 – has been decimated.
>
> 52. In addition to the damage to [MSL's] reputation, [MSL] also suffered special damages in the form of lost revenue and profits associated with the brokers' refusal to do business with [MSL] based on the false FreightGuard Report, including the loss of a $700,000 contract and deactivation of its accounts by several brokers.

ECF No. 1. These allegations are sufficient to support MSL's entitlement to special damages. *See ADT LLC v. Vivant Smart Home, Inc.*, No. 20-23391-CIV, 2021 WL 4478932, at *3 (S.D. Fla. Sept. 30, 2021) (J. Cooke) (finding allegations that defendant's actions caused plaintiff "to lose sales, profits, and good will" sufficient to support entitlement to special damages); *see also ThermoLife Int'l LLC v. Vital Pharms. Inc.*, No. 19-CV-61380, 2020 WL 409594, at *2 (S.D. Fla. Jan. 24, 2020) (J. Bloom) (finding allegations that defendant's actions caused current and potential customers to refrain from purchasing plaintiff's products and that plaintiff has suffered lost sales and counter-promotion costs sufficient to plead entitlement to special damages).

Direct Traffic cites two cases supporting its argument that MSL failed to plead its entitlement to special damages. ECF No. 17 at 5-6 (first citing *Flynn*, 2023 WL

5985193, at *5; then citing *Falic*, 347 F. Supp. 2d at 1268). Both cases are distinguishable from this case.

In *Flynn*, the plaintiff alleged conclusory injuries such as "insult, pain, embarrassment, humiliation, emotional suffering, injury to reputation, lost future earnings, [and] diminished earning capacity." 2023 WL 5985193, at *5. She did not allege an actual loss of employment or other realized loss attributable to the defamatory statements made about her. *Id*. In *Falic*, three shareholder plaintiffs alleged that they were injured by the depreciation of their stock in a corporation, the *corporation's* payment of attorneys' fees in separate litigation, and the *corporation's* loss of business. 347 F. Supp. 2d at 1269-70. The shareholder plaintiffs failed to show that the depreciation of their stock resulted in a realized loss, such as the plaintiffs' sale of the stock at a loss, and failed to show that they suffered *individually* from the corporation's losses. *Id.*

Here, MSL alleges that it suffered realized losses, due to the FreightGuard Report, in the form of a lost contract and a client's refusal to continue to do business with MSL. For the reasons stated above, MSL pled sufficient factual support for its entitlement to special damages and the Motion to Dismiss Count II should be denied. *See Falic*, 347 F. Supp. 2d at 1269-70 (stating that "a corporation can properly allege special damages for injurious falsehood by identifying the loss of specific customers or transactions lost as a result of the disparagement.").

C. *Direct Traffic's request for a more definite statement should be denied.*

In the alternative to dismissal, Direct Traffic asks that MSL be required to provide a more definite statement. ECF No. 17 at 2. Specifically, Direct Traffic asks that MSL be required to provide "the dates on which the [defamatory] statements were made, the date that [Direct Traffic] knew or should have known that the statements they were making were false and other allegations necessary to plead a claim for defamation." *Id*.

Direct Traffic's request for a more definite statement should be denied because it fails to show that the Complaint is "so vague or ambiguous" that it cannot reasonably respond. Indeed, the details Direct Traffic requests in a more definite statement are either already alleged in the Complaint (the date the defamatory statements were made) or are not required to plead a short and plain statement of defamation (the date Direct Traffic knew or should have known that the statements it made were false).

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for More Definite Statement (ECF No. 17).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District

Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 20th day of December 2023.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE